Christopher B. Snow (8858)
Shaunda L. McNeill (14468)
**CLYDE SNOW & SESSIONS**
201 South Main Street, 13th Floor
Salt Lake City, Utah 84111-2516
Telephone: 801.322.2516
cbs@clydesnow.com
slm@clydesnow.com

*Attorneys for Defendant Alpine Securities Corporation*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EMILY NANCE,<br><br>Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>Defendant. | **MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Case No. 2:18-cv-00531<br><br>Judge Bruce S. Jenkins<br><br>ORAL ARGUMENT REQUESTED |

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and DUCivR 7-1, Defendant Alpine Securities Corporation ("Alpine" or the "Company"), by and through its counsel, moves this Court for an order dismissing all allegations and causes of action alleged in Plaintiff's Complaint.

## MOTION TO DISMISS

## RELIEF REQUESTED

Defendant Alpine hereby moves the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing Plaintiff Emily Nance's state law claim for wrongful termination.

{01424902-4 }

**GROUNDS FOR RELIEF**

Plaintiff Emily Nance ("Nance") has filed a state law wrongful termination claim against Alpine for allegedly terminating Nance in retaliation for internally reporting what Nance allegedly believed to be violations of securities laws. Alpine respectfully submits that this Court lacks subject-matter jurisdiction over the state law wrongful termination claim, the only claim asserted in the Complaint. Accordingly, Nance's wrongful termination claim and the Complaint should be dismissed pursuant to Rule 12(b)(1). Alpine expressly reserves the right to answer or otherwise respond to any claims against it that are not addressed in the Motion or that survive the Motion.

**MEMORANDUM**

**FACTS**

1. Alpine Securities is a registered self-clearing broker-dealer headquartered in Utah, offering Individual and Institutional Services. The Complaint alleges that Alpine is engaged in business in Salt Lake County, Utah. Complaint, ¶ 3.

2. The Complaint alleges that Alpine hired Nance as a Compliance Analyst on or about May 24, 2017 to work in the Salt Lake City office. Complaint, ¶ 4.

3. Nance alleges that she believed the law required Alpine to prepare "suspicious activity reports" ("SARs") within 30 days of suspicious activity. Complaint, ¶ 5.

4. Nance reported directly to Erin Zipprich, Alpine's compliance officer. *Id*.

5. Nance alleges that on one occasion she was with Zipprich when Zipprich became incoherent and was taken to the hospital where she allegedly tested positive for marijuana, amongst other salacious allegations, which Alpine denies. Complaint, ¶¶ 6-13.

6. The Complaint alleges that after the hospital incident, Zipprich refused to train or work with Nance. Complaint, ¶ 14.

7. Nance alleges that she became aware that the Company was not preparing and filing SARs on a complete or timely basis, that the Company tried to conceal delayed reporting of suspicious activities, and that the company altered dates on suspicious activity reports. Complaint, at ¶ 17.

8. The Complaint alleges that Nance decided to "blow the whistle" on July 6, 2017 when Erin Zipprich was purportedly absent. Nance alleges she met with her second-level supervisor and told him that the company was not complying "with the laws relating to filing SARs" and that she was fearful of retaliation by Zipprich for reporting this conduct. Complaint, ¶¶ 19-25.

9. On July 7, according to the Complaint, Alpine terminated Nance. The Complaint alleges that Zipprich confronted Nance and accused her of reporting to Zipprich's supervisor that Zipprich doctored documents. Nance alleges that Zipprich and the second level supervisor then met with Nance and informed her that her employment was being terminated and that "it was not working out" and that as an at-will employee Alpine was not required to provide a basis for termination. Complaint, at ¶ 26-29.

10. Nance alleges that the Company fired her in retaliation for her blowing the whistle on what she believed were violations of federal law. Complaint, ¶ 30.

11. Nance alleges a single state law cause of action in the Complaint for Wrongful Termination, comprising allegations nos. 34-47. Specifically, Nance alleges:

      a. "The State of Utah has a clear and substantial public policy that businesses operating in the State are to comply with all state and local laws, regulations and ordinances." Complaint, ¶ 35.

      b. "By blowing the whistle on the practices Ms. Nance became aware of, which she, in good faith, believed violated such clear and substantial public policies,

    Ms. Nance was engaging in protected activity – namely, activity protected by clear and substantial public policies." Complaint, ¶ 36.

  c. "Ms. Nance alleges that, immediately after she engaged in such protected activity and because of Ms. Nance's actions in engaging in such protected activity, Alpine Securities took adverse actions against her, including terminating her employment." Complaint, ¶ 37.

  d. "For Alpine Securities to take such adverse action against Ms. Nance immediately following and because of Ms. Nance's actions in 'blowing the whistle' on practices Ms. Nance believed to be unlawful, violates public policy." Complaint, ¶ 39.

  e. "Ms. Nance alleges that, under such circumstances, such a termination constitutes wrongful termination." Complaint, ¶ 40.

## ARGUMENT

### I. Legal Standard for Rule 12(b)(1) Motions.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may take two forms: (1) a facial attack on the complaint's allegations as to subject matter jurisdiction which questions the sufficiency of the complaint; or (2) "a party may go beyond allegations contained in the complaint and challenge the facts upon which the subject matter jurisdiction depends." *Holt v. U.S.*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id* at 1002. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id* at 1003.

## II.     Lack of Federal Subject-Matter Jurisdiction

Plaintiff's Complaint must be dismissed because it is clear from the face of the Complaint that this Court lacks subject-matter jurisdiction. Federal district courts have original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. "For a case to arise under federal law, the federal question must be apparent on the face of a well-pleaded complaint, and Plaintiff's cause of action must be created by federal law or, if it is a state-law cause of action, its resolution must necessarily turn on a substantial question of federal law." *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The substantiality inquiry does not look to the "the importance of the issue to the plaintiff's case" but "looks instead to the importance of the issue to the federal system as a whole." *Id.* at 260; *see also Eastman v. Marine Mechanical Corp.*, 438 F.3d 544 (6th Cir. 2006) ("A 'substantial' federal question involves the interpretation of a federal statute that actually is in dispute in the litigation and is so important that it 'sensibly belongs in federal court.'").

### A.  Plaintiff's Claim Fails to Raise a Substantial Federal Question that Is Actually Disputed and Appropriate for Resolution in Federal Court.

Plaintiff has asserted only a state law claim for wrongful termination in violation of public policy. A Utah claim for wrongful termination in violation of public policy is comprised of the following elements:

   1) termination of the employee's employment by the employer;
   2) existence of "a clear and substantial public policy";
   3) conduct by the employee that "brought the policy into play"; and
   4) causal connection between "the discharge and the conduct bringing the policy into play."

*Pang v. Int'l Document Servs.*, 2015 UT 63, ¶ 20, 356 P.3d 1190. The Complaint alleges that the Company fired her in retaliation for having blown the whistle on what she believed were violations of unidentified federal securities laws requiring the Company to file suspicious activity reports. Complaint ¶¶ 21, 30. Thus, she appears to allege that Utah has a clear and substantial public policy favoring compliance with these unidentified federal securities laws, which public policy was furthered by her act of internally reporting concerns to her second-level supervisor.[1] Plaintiff's allegations fail to raise a substantial federal question that is actually disputed and capable of resolution in federal court without disrupting the judicial balance between federal and state courts. *See Gunn*, 568 U.S. at 258.

State law claims that raise issues of sufficient "importance" to "the federal system as a whole" to create "arising under" jurisdiction are a "special and small category" of cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). The Supreme Court provided two examples of such cases in *Gunn*: (1) a quiet title claim that challenged actions by the Internal Revenue Service in seizing and selling property, *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and (2) a claim for injunctive relief seeking to prevent a corporation from investing in government bonds that the plaintiff alleged to have been unconstitutionally issued, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921). *See Gunn*, 568 U.S. at 260-61 (holding that malpractice claim raising issue of patent validity did not raise a substantial federal issue because the determination was of importance only to the parties and was only a hypothetical determination of validity).

---

[1] This is a charitable reading of the Complaint, as Plaintiff actually alleges that she was terminated for acting in furtherance of Utah's "clear and substantial public policy that businesses operating in the State are to comply with all **state and local** laws, regulations and ordinances." *See* Complaint, ¶ 35 (emphasis added).

This case will not require the Court to interpret a federal statute, pass judgment on the action of a federal entity, or otherwise make any determination that, if made by a state court, would "disrupt[] the federal-state balance approved by Congress." *Id*. To the contrary, the central questions presented here are questions of fact and of state law: (1) whether Plaintiff was terminated, (2) whether Utah recognizes as a clear and substantial state public policy the requirements of the federal statutes referenced (but not specifically identified) in the Complaint, (3) whether Plaintiff's conduct furthered such state public policy, and (4) whether causation is present. *See Pang*, 2015 UT 63, ¶ 20 (stating elements of claim for wrongful termination in violation of public policy). The second question, which appears to be Plaintiff's would-be jurisdictional hook, is essentially a state law question involving the scope of Utah's own public policy. Thus, no substantial federal issue is in dispute, and "the federal-state balance approved by Congress" would be "disrupt[ed]" by this Court's **retention** of the case, rather than by its dismissal of the case. *See id.* at 258.

In addition, the meaning of the federal statutes is not in dispute. The only legal analysis related to federal statutes will involve citing them, considering their place, if any, in the public policy of the State of Utah, and considering whether the plaintiff's conduct furthered the state's public policy. The adjudication of Plaintiff's claim will not "change the real-world result" of any federally granted rights or create precedent with regard to the interpretation of any federal statute. *Gunn*, 568 U.S. at 26. The outcome will have no "importance . . . to the federal system as a whole." *Id.* at 260. Plaintiff's claim simply does not arise under federal law and must be dismissed for lack of subject-matter jurisdiction.

### B. Federal Courts Have Uniformly Declined to Exercise Jurisdiction Over State Law Claims for Wrongful Termination in Violation of Public Policy.

Federal courts have "uniformly" held that subject-matter jurisdiction is absent where "a purported 'federal question' [is] embedded in a plaintiff's common law wrongful discharge cause of action." *Greeney v. Ctr. for Human Dev., Inc.*, 725 F. Supp. 2d 259, 263 (D. Mass. 2010). In particular, the Fifth, Sixth, and Ninth Circuits have each ruled that a state law claim for wrongful termination in violation of public policy does not "aris[e] under" federal law for purposes of 28 U.S.C. § 1331 even though the alleged public policy incorporates federal standards.

In *Willy v. Coastal Corp.*, 855 F.2d 1160, 1162 (5th Cir. 1988), the plaintiff alleged he was terminated in violation of Texas public policy for insisting that his employer (an oil and gas company) "comply with various state and federal environmental and securities laws" and for refusing to participate in the violation of these laws. The plaintiff simultaneously pursued federal whistleblower remedies with the U.S. Department of Labor. The Fifth Circuit held that the case should have been remanded to state court because the federal court lacked subject-matter jurisdiction even though the claim "in part relie[d] upon federal law." *Id.* at 1167. The Fifth Circuit reasoned that "the federal issues in Willy's claim are not ones in the forefront of the case, but are more collateral in nature, and are not substantial in relation to the claim as a whole, which is in essence one under state law." The tort of wrongful termination was a state law cause of action "intended to protect the rights of [Texas] employees," and it was immaterial to the remedial scheme whether the employee was terminated for violating a state law or a federal law. *Id.* at 1171.

In *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544 (6th Cir. 2006), the plaintiff alleged that he was terminated in violation of Ohio public policy for opposing practices by his employer (a federal contractor) that violated the False Claims Act. The Sixth Circuit held that the case should have been remanded to state court because no "substantial federal question" was presented and

because employment litigation generally belongs in state court except where Congress has explicitly created a federal cause of action. *Eastman*, 438 F.3d at 553. The Sixth Circuit reasoned:

> Employment litigation is a common occurrence in both federal and state courts. Federal legislation has provided access to the federal courts by aggrieved employees under specifically delineated circumstances, *e.g.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, but our perception is that the bulk of the judicial business in the United States in this area is conducted by the state courts. This balance would be upset drastically if state public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy. We believe such a dramatic shift would distort the division of judicial labor assumed by Congress under section 1331.

*Id.*

Similarly, in *Campbell v. Aerospace Corp.*, 123 F.3d 1308 (9th Cir.1997), the plaintiff alleged that he was terminated in violation of California public policy for opposing practices by his employer (a federal contractor) that violated the False Claims Act. After the case was removed to federal court and adjudicated, the Ninth Circuit held that the plaintiff's reliance on the False Claims Act as the source of state public policy "did not implicate a federal interest sufficiently substantial to confer federal-question jurisdiction." *Campbell*, 123 F.3d at 1315. The Ninth Circuit reasoned that to recognize the plaintiff's claim as one "arising under" federal law would allow plaintiffs to circumvent the "carefully established explicit prerequisites to qui tam actions" under the False Claims Act "by generically referencing the 'public policy' of the FCA." *Id.* Such a result would contravene congressional intent as expressed in the False Claims Act. *Id.*

Here, as set forth *supra* in Section II.A. and for the reasons stated by the Fifth, Sixth, and Ninth Circuits, Plaintiff's wrongful termination claim fails to implicate a substantial federal issue. In addition, for this Court to retain the case would "distort the division of judicial labor assumed by Congress under section 1331" and contravene Congress's carefully established regime for

protecting employees that blow the whistle on federal securities law violations. *Eastman*, 438 F.3d at 553; *Campbell*, 123 F.3d at 1315. Both the Sarbanes-Oxley Act and the Dodd Frank Act provide carefully constructed whistleblower protections with strict prerequisites and filing deadlines. *See* 18 U.S.C. § 1514A (Sarbanes-Oxley whistleblower requirements); 15 U.S.C. 78u-6 (Dodd Frank whistleblower requirements). It would contravene congressional intent "to allow a state-law claim to circumvent these requirements and limitations by generically referencing the 'public policy'" of the suspicious activity report statutes in a state law claim and then recognizing the claim as one arising under federal law. *See Campbell*, 123 F.3d at 1315; *see also Willy*, 855 F.2d at 1169 ("[I]t would . . . flout congressional intent to give the federal court original (and hence removal) jurisdiction based on statutes that limit the federal remedy to an administrative action"); *Browand v. Ericsson Inc.*, No. 18-CV-02380-EMC, 2018 WL 3646445, at *5 (N.D. Cal. Aug. 1, 2018) ("[A]llowing state law wrongful termination claims into federal court on the basis of alleged SOX [Sarbanes-Oxley] violations could create a 'backdoor' circumventing the SOX requirements to file an administrative claim with the Secretary of Labor before filing suit in district court.").

This Court should follow the sound reasoning of the Fifth, Sixth, and Ninth Circuits by ruling that Plaintiff's claim does not arise under federal law and therefore must be dismissed.

## CONCLUSION

Based on the foregoing, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1).

DATED this 2nd day of November, 2018.

                                        **CLYDE SNOW & SESSIONS**

                                        /s/ Christopher B. Snow
                                        Christopher B. Snow
                                        Shaunda L. McNeill
                                        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November 2018, I caused a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMSS PLAINTIFF'S COMPLAINT** to be served via the Court's CM/ECF filing system upon the addressee(s) listed below:

> David J. Holdsworth
> 9125 South Monroe Plaza Way, Suite C
> Sandy, UT 84070
> david_holdsworth@hotmail.com
> *Attorney for Plaintiff*

/s/ Jessica Ritchie
*Legal Secretary*