**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| EMILY NANCE,<br><br>Plaintiff,<br><br>v.<br><br>ALPINE SECURITIES CORPORATION,<br><br>Defendant. | : | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**<br><br>Civil No. 2:18-cv-00531-BSJ<br><br>Hon. Bruce S. Jenkins |

Emily Nance, Plaintiff herein, by and through her counsel of record, David J. Holdsworth, hereby responds to Defendant Alpine Securities Corporation's motion to dismiss, filed on or about November 2, 2018, as follows:

**INTRODUCTION**

In Plaintiff's Complaint, Plaintiff alleged that the U.S. District Court had jurisdiction of this case pursuant to federal question — namely, allegations implicating federal securities laws which require businesses in the securities industry (including

broker dealers) which detect suspicious activity to report and file suspicious activity reports in an accurate and timely manner.[1]

In essence, Defendant's motion to dismiss poses the question of whether Plaintiff's whistleblower retaliation/wrongful termination claim and, therefore, her Complaint, belong in federal district court (due to the existence of federal question jurisdiction) or state court (due to lack of federal question jurisdiction).

Defendant's motion to dismiss does not argue that the case does not belong in some court (that is, it is not a motion under Federal Rule of Civil Procedure 12 (b) (6) or a motion for summary judgment under Federal Rule of Civil Procedure 56) and is not framed as moving for a dismissal with prejudice and on the merits. Thus, the Defendant's motion to dismiss requires the Court to figure out if there is a basis for federal question jurisdiction and for keeping Plaintiff's case in federal district court, or if Plaintiff needs to just start over by filing in state court (or have the Court transfer the case to state court).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF ALLEGEDLY UNDISPUTED FACTS**

[1]Complaint, *see* ¶ 1. Plaintiff notes that, when the Clerk's office scanned the Complaint, it missed page 2 of the Complaint, and, thus, the copy of the Complaint in the Court's ECF file does not include page 2. Plaintiff files herewith a complete copy of the Complaint.

1. Alpine Securities is a registered self-clearing broker-dealer headquartered in Utah, offering Individual and Institutional Services. The Complaint alleges that Alpine is engaged in business in Salt Lake County, Utah. Complaint, ¶ 3.

RESPONSE: Undisputed.

2. The Complaint alleges that Alpine hired Nance as a Compliance Analyst on or about May 24, 2017 to work in the Salt Lake City office. Complaint, ¶ 4.

RESPONSE: Undisputed.

3. Nance alleges that she believed the law required Alpine to prepare "suspicious activity reports" ("SARs") within 30 days of suspicious activity. Complaint, ¶ 5.

RESPONSE: Undisputed.

4. Nance reported directly to Erin Zipprich, Alpine's compliance officer. *Id.*

RESPONSE: Undisputed.

5. Nance alleges that on one occasion she was with Zipprich when Zipprich became incoherent and was taken to the hospital where she allegedly tested positive for marijuana, amongst other salacious allegations, which Alpine denies. Complaint, ¶¶ 6-13.

RESPONSE: Disputed, as phrased. In her Complaint, Ms. Nance alleges what happened. In her Complaint, she did not use the word "salacious" to describe Zipprich's alleged conduct.

6. The Complaint alleges that after the hospital incident, Zipprich refused to train or work with Nance. Complaint, ¶ 14.

RESPONSE: Undisputed.

7. Nance alleges that she became aware that the Company was not preparing and filing SARs on a complete or timely basis, that the Company tried to conceal delayed reporting of suspicious activities, and that the company altered dates on suspicious activity reports. Complaint, at ¶ 17.

RESPONSE: Undisputed.

8. The Complaint alleges that Nance decided to "blow the whistle" on July 6, 2017 when Erin Zipprich was purportedly absent. Nance alleges she met with her second-level supervisor and told him that the company was not complying "with the laws relating to filing SARs" and that she was fearful of retaliation by Zipprich for reporting this conduct. Complaint, ¶ ¶ 19-25.

RESPONSE: Undisputed.

9. On July 7, according to the Complaint, Alpine terminated Nance. The Complaint alleges that Zipprich confronted Nance and accused her of reporting to

Zipprich's supervisor that Zipprich doctored documents. Nance alleges that Zipprich and the second level supervisor then met with Nance and informed her that her employment was being terminated and that "it was not working out" and that as an at-will employee Alpine was not required to provide a basis for termination. Complaint, at ¶ 26-29.

RESPONSE: Undisputed.

10. Nance alleges that the Company fired her in retaliation for her blowing the whistle on what she believed were violations of federal law. Complaint, ¶ 30.

RESPONSE: Undisputed.

11. Nance alleges a single state law cause of action in the Complaint for Wrongful Termination, comprising allegations nos. 34-47. Specifically, Nance alleges:

a. "The State of Utah has a clear and substantial public policy that businesses operating in the State are to comply with all state and local laws, regulations and ordinances." Complaint, ¶ 35.

b. "By blowing the whistle on the practices Ms. Nance became aware of, which she, in good faith, believed violated such clear and substantial

public policies, Ms. Nance was engaging in protected activity – namely, activity protected by clear and substantial public policies." Complaint, ¶ 36.

c. "Ms. Nance alleges that, immediately after she engaged in such protected activity and because of Ms. Nance's actions in engaging in such protected activity, Alpine Securities took adverse actions against her, including terminating her employment." Complaint, ¶ 37.

d. "For Alpine Securities to take such adverse action against Ms. Nance immediately following and because of Ms. Nance's actions in 'blowing the whistle' on practices Ms. Nance believed to be unlawful, violates public policy." Complaint, ¶ 39.

e. "Ms. Nance alleges that, under such circumstances, such a termination constitutes wrongful termination." Complaint, ¶ 40.

RESPONSE: Undisputed, in general. As to ¶ 35 of her Complaint, Ms. Nance did not allege that the State of Utah has a clear and substantial public policy that businesses operating in the State are to comply with all <u>federal</u>, state and local laws, regulations and ordinances. In ¶ 35 of the Complaint, she did not list "federal...laws...". She probably should have, but did not. Elsewhere in the Complaint, however, she alleged that <u>federal</u> securities laws required her employer to do what she had alleged her employer was not

doing and that such failure was what motivated her to blow the whistle. *See* Complaint ¶¶ 1, 5, 17, 19, 21, 22, 23.

**ARGUMENT**

**I. Legal Standard for Federal Rule of Civil Procedure (b) (1) Motions.**

Plaintiff agrees with the Defendant's discussion of the legal standard for adjudicating motions under Federal Rule of Civil Procedure Rule 12 (b) (1). Essentially, the issue is whether the allegations in the Complaint, on their face, and/or based on any and all facts upon which subject matter jurisdiction depends, provide a basis for the Court to exercise federal question subject matter jurisdiction.

**II. The Issue of Federal Subject Matter Jurisdiction or the Lack Thereof**

**A. Whether Plaintiff's claim raises a substantial federal question that is actually disputed and appropriate for a federal court to resolve**

Plaintiff's Complaint alleges a wrongful termination. Plaintiff Nance is alleging that Utah has a clear and substantial public policy that businesses in the financial services industry are to comply with federal securities laws (as well as other state and local laws). *See* Complaint, ¶¶ 1 and 35.

It is true that, in Plaintiff's Complaint, she does not specifically identify which federal securities laws require businesses to report suspicious activities.[2]

[2]Plaintiff would assert that such federal laws include the Bank Secrecy Act, 12 U.S.C. ch. 13 § 1724; 12 U.S.C. ch. 16 § 1813; 15 U.S.C. ch. 2B § 78a, and the Patriot Act, § 356, 31 U.S.C. § 5318 (g), which requires registered broker dealers to file SARs under 31 U.S.C. § 5318 (g).

Defendant Alpine does not challenge these allegations. It argues that, if an employee blows the whistle on an employer's failure to comply with federal securities laws and gets fired for engaging in such whistleblowing, such is a situation that is not important enough to the federal system of ensuring compliance with federal securities laws to provide such employees with access to the federal district courts.[3]

If the Court were to find that the federal securities laws are silent on whether an employee whistleblower can sue under such federal laws and that the instant case will not involve the interpretation of such federal statutes, then Plaintiff is inclined to agree with the Defendant that the Court may dismiss the Complaint without prejudice and not on the merits and/or transfer the same to State court.

**B. Discussion of the case law and whether federal courts have exercised jurisdiction over claims for wrongful termination in violation of federal law**

Plaintiff Nance appreciates Defendant Alpine's discussion of the fate of cases in federal court where plaintiffs have asserted common law wrongful termination

[3]If any of the federal securities laws at issue expressly provided a private right of action for aggrieved employees, there would be no merit to Defendant Alpine's motion to dismiss, but Plaintiff has not alleged that the Bank Secrecy Act or the Patriot Act create a private right of action for a whistleblower or vest a whistleblower who has made internal complaints to her employer and who is then fired, a statutorily created private right of action. Plaintiff is presently unsure whether 31 U.S.C. § 5328 (a) and (b) may give her the right to file in federal district court, but she has not specifically alleged such as a basis for federal question jurisdiction. Perhaps the Court should consider allowing Plaintiff a period of time (30 days) to file an Amended Complaint asserting 31 U.S.C. § 5328 (a) and (b) as a basis for federal question jurisdiction.

causes of action based on public policy where the public policy being alleged includes federal laws or federal standards.

If the law is that Plaintiff's reliance on federal securities laws as a source of public policy, which she implicated by blowing the whistle, which, in turn, motivated her employer to discharge her, does not implicate a federal interest sufficiently substantial to confer federal question subject matter jurisdiction on a federal district court, then, it may be appropriate for the Court to dismiss the Complaint without prejudice and not on the merits and/or transfer it to the State court.

**CONCLUSION**

Employment litigation is a common occurrence in both federal and state courts. Congress has deemed certain public policies to be so important that it has specifically provided certain classes of aggrieved employees with access to the federal courts. For example, employees complaining of denial of equal employment opportunity because of race, color, gender, religion, age, disability, etc., have special dispensations to file civil actions in federal district court.

In the instant case, the federal statutes such as the Bank Secrecy Act of 1970, and the Patriot Act, which require broker dealers to file suspicious activity reports, may be silent as to the rights of whistleblowers who make internal complaints and get fired for doing so to assert claims in federal court. If such silence on such a

subject is fatal to federal question jurisdiction, so be it. Plaintiff will simply "turn around" and assert her claim in state court.[4, 5]

DATED this 29th day of November, 2018.

*/s/ David J. Holdsworth*
David J. Holdsworth
*Attorney for Plaintiff*

[4]31 U.S.C. § 5328 might have protected Ms. Nance if she had blown the whistle to an outright regulatory authority. In the instant case, Ms. Nance did not have the opportunity to do so. She reported her concerns Alpine on July 7, 2017. The next day, Alpine fired her.

[5]If the Court were to dismiss the case without prejudice or transfer the case to State court, and Plaintiff were to file in state court, Defendant might file a motion arguing that the federal law which require broker dealers to report on suspicious activity is not clear enough or substantial enough to constitute a public policy by which to protect whistleblowers, with perhaps a cite to *Fox v. MCI Communications*, 931 P.2d 857 (Utah 1997). Since the Utah Supreme Court decided *Fox*, we have seen the Congress pass the Patriot Act, 31 U.S.C. U.S.C. § 5318 (g), the Sarbanes Oxley Act, 18 U.S.C. § 1514A, the Dodd Frank Act, 15 U.S.C. § 78u-6, and we have seen the Executive Branch promulgate regulations to implement the same. This legislative activity could persuade the Utah courts that whistleblowing in the federal securities industry is no longer a matter of purely private concern.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of November, 2018, a true, correct and complete copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS was delivered upon the attorney(s) indicated below by the following method(s):

___ Facsimile
___ U.S. Mail
___ Hand Delivery
___ Overnight Delivery
___ E-Mail
_X_ Electronic Filing

Christopher B. Snow, Esq.
Shaunda L. McNeill, Esq.
CLYDE SNOW & SESSIONS
201 South Main Street, 13th Floor
Salt Lake City, Utah 84111-2516
cbs@clydesnow.com
slm@clydesnow.com

*/s/ David J. Holdsworth*
David J. Holdsworth